902 F.2d 35
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ralph CRACIUM, Defendant-Appellant.
 No. 89-3762.
 United States Court of Appeals, Sixth Circuit.
 April 30, 1990.
 
 Before KEITH and MILBURN, Circuit Judges; and GEORGE E. WOODS, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-appellant Ralph Cracium brings this timely appeal from jury convictions for one count of conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and 21 U.S.C. Sec. 846, three counts of distribution of cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2, and one count of possession of marijuana in violation of 21 U.S.C. Sec. 844. For the reasons that follow, we affirm.
 
 I.
 
 2
 On February 7, 1989, the FBI arrested Jerry Mulholland after an undercover FBI agent purchased cocaine from him. Mulholland admitted an earlier purchase on February 1, 1989, which was delivered by Roberta Young. He named his source as Yvonne Carpenter and agreed to cooperate with the FBI in further investigations. Mulholland then set up another purchase for February 10, 1989.
 
 
 3
 Carpenter and Young made the February 10th delivery, and they were arrested. Both women agreed to cooperate with the FBI. They said that Ralph Cracium had fronted them the cocaine and was waiting to receive the money. Upon their release from custody, the two women met Cracium, and they drove away in his automobile. The FBI stopped the automobile and arrested Cracium. Cracium denied any knowledge of a drug deal and agreed to a search of his person and residence. A search of his apartment produced only a small amount of marijuana and some zip-lock baggies.
 
 
 4
 At trial, both women testified that Cracium was the source of the cocaine for all three transactions. Surveillance photographs showed Cracium in close vicinity to two of the transactions and at the home of Yvonne Carpenter just before the last transaction.
 
 
 5
 Both women successfully entered plea agreements, and at trial the defendant was allowed to question them extensively about the plea agreements. During cross-examination of Young, the defendant was able to show that she was unemployed and living with an employed male companion. He then attempted to illicit an admission that despite her live-in arrangement, she received welfare benefits from the State of Ohio. The government objected, and the objection was sustained.
 
 
 6
 Counsel for the defendant argued that receipt of welfare benefits while cohabiting with an employed person amounted to a fraud. The court responded that the defendant's theory was "reaching quite a distance," and instructed the jury to disregard the question as irrelevant.
 
 
 7
 The defendant then made the following offer of proof:
 
 
 8
 [I]t's my belief that she does, in fact, receive welfare in spite of the fact that she's living with somebody who is employed, and that's a felony in the State of Ohio. It's welfare fraud, could carry a penalty of up to two years in a penitentiary and a $5,000 fine.
 
 
 9
 I believe that it is not an extrinsic matter, rather it is a matter which shows a fraudulent scheme by the witness, and I think it is admissible to attack the character traits for untruthfulness. I believe if, in fact, she is stealing welfare monies, I think that bears directly on her character at any rate for truthfulness, and I believe that it is admissible evidence.
 
 
 10
 I cite the case of United States v. Leake, 642 F.2d 715. It's a Fourth Circuit case, 1981. I was able to find an Eleventh Circuit case which had some different facts but basically held the same proposition that, although you can't normally impeach on extrinsic matters, this kind of a fraudulent scheme on the part of a witness would be admissible to attack the witness's character trait for untruthfulness.
 
 
 11
 Before the case was submitted to the jury, the defendant asked for a limiting instruction regarding the testimony of law enforcement officers. The court responded that its general instruction cautioning the jurors to consider any relation the witnesses might bear to either side was sufficient.
 
 
 12
 The issues presented for review are (1) whether the district court abused its discretion by forbidding cross-examination concerning Young's possible receipt of welfare benefits while cohabiting with an employed person, (2) whether the district court committed prejudicial error in refusing to give a limiting instruction pertaining to the testimony of law enforcement officers, and (3) whether the evidence was sufficient to support the convictions.
 
 II.
 A.
 
 13
 Defendant's claimed errors are subject to differing standards of review. An evidentiary ruling will not be reversed absent a clear showing of abuse of discretion. United States v. Rios, 842 F.2d 868, 872 (6th Cir.1988) (per curiam), cert. denied, 109 S.Ct. 840 (1989). A claimed error or omission in jury instructions is reviewed to see whether the charge as a whole "fairly and accurately" submits the issues and applicable law to the jury. Miller v. Taylor, 877 F.2d 469, 471 (6th Cir.1989) (per curiam). When an appeal is taken from a criminal conviction on grounds that the evidence is insufficient to support the verdict, the reviewing court determines "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)).
 
 B.
 
 14
 Defendant argues that the trial court abused its discretion when it prevented cross-examination of Roberta Young concerning her receipt of welfare benefits while cohabiting with an employed person. Federal Rule of Evidence 608(b) forbids impeachment through prior instances of misconduct unless the misconduct (1) resulted in a conviction, or (2) is probative of truthfulness or untruthfulness.[1]
 
 
 15
 The defendant argues that the questioning should have been allowed because cohabiting with an employed individual is a felony in the State of Ohio and amounts to a fraud. Assuming arguendo that the witness' alleged actions were a felony under state law, defendant is not helped by that fact. Unless the actions are probative of truthfulness, they must result in conviction before special treatment is given to felonious acts under section 608(b).
 
 
 16
 The defendant relies upon United States v. Leake, 642 F.2d 715 (4th Cir.1981), to show that Young's conduct was probative of untruthfulness. In Leake, the witness had engaged in numerous fraudulent acts showing a "pattern of fraudulent activity that, if revealed, would have placed [the witness'] credibility in question." 642 F.2d at 719 (emphasis added). This record furnishes no support for a contention that Roberta Young's alleged receipt of welfare benefits amounted to a similar pattern of fraudulent activity. Thus, defendant's reliance upon Leake is misplaced.
 
 
 17
 We agree with the district court that the defendant was "reaching quite a distance" to find a character for untruthfulness from the witness' alleged actions. See Owens v. Foltz, 797 F.2d 294, 296 (6th Cir.1986) (inquiry should not be allowed where theory was "merest speculation"). Defendant was able to establish that the witness was cohabiting with an employed individual. Presumably, if the next question had been allowed, the defendant could have established that the witness was, at the same time, receiving welfare benefits. However, nothing in the record or defendant's proffer links the witness' actions to untruthful conduct. Untruthful character is not established upon a mere showing that the witness acted immorally or violated the law. See United States v. Smith, 831 F.2d 657, 661 (6th Cir.1987), cert. denied, 484 U.S. 1072 (1988) (prostitution not probative of untruthfulness); Owens, 797 F.2d at 296 (prior drug dealings). Thus, we find no abuse of discretion in the district court's ruling.
 
 
 18
 We also find defendant's argument concerning the requested limiting instruction to be without merit. The district court's approach was entirely consistent with our approach in United States v. Vinson, 606 F.2d 149, 154 (6th Cir.1979), cert. denied, 444 U.S. 1074 (1980) (no special instruction on informants needed since instruction to treat accomplices' testimony with care had the same cautionary effect), and the Second Circuit's reasoning in United States v. Ouimette, 798 F.2d 47, 49 (2d Cir.1986), cert. denied, 109 S.Ct. 163 (1988) (no need to instruct that police officers are interested witnesses given the general instruction to scrutinize all testimony).
 
 
 19
 The defendant's argument that the evidence is insufficient to support the convictions is entirely without merit. From the testimony of the female couriers (Young and Carpenter), the testimony of Mulholland, and the surveillance photographs introduced into evidence, "any rational trier of fact" could find the essential elements of the crimes charged. Gallo, 763 F.2d at 1518 (emphasis in original).
 
 III.
 
 20
 Accordingly, for the reasons stated, we AFFIRM.
 
 
 
 *
 Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning the witness' character for truthfulness or untruthfulness.... Fed.R.Evid. 608(b)